IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ADAM BETHUNE, 183099 | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO.: 2:05-CV-1028-T |
| | ) |
| SGT. TIMOTHY LOGAN, et. al. | ) |
| | ) |
| Defendants. | ) |

## SPECIAL REPORT

COME NOW, the defendants, **Timothy Logan, Brenda King** and **John Gordon** by and through the Attorney General for the State of Alabama, Honorable Troy King, and in accordance with this Honorable Court's Order entered on November 17, 2005, do hereby submit the following Special Report.

## PARTIES

1. The plaintiff, Adam Bethune, is an Alabama Department of Corrections (ADOC) inmate, who is presently incarcerated at Draper Correctional Center, in Elmore, Alabama.

2. Plaintiff has named the following defendants:

    a. Timothy Logan, who presently is employed by the Alabama Department of Corrections as a Correctional Officer II at Draper Correctional Center.

    b. John Gordon, who presently is employed by the Alabama Department of Corrections as a Correctional Officer I at Draper Correctional Center.

    c. Brenda King, who presently is employed by the Alabama Department of Corrections as a Correctional Officer II at Draper Correctional Center.

## DEFENDANTS' EXHIBITS

In accordance with this Court's Order, the defendants submit the following exhibits:

1. Exhibit "A" – Affidavit of Timothy Logan.
2. Exhibit "B" – Affidavit of John Gordon.
3. Exhibit "C" – Affidavit of Brenda King.

## PLAINTIFF'S ALLEGATIONS

The plaintiff alleges that he was grabbed around his throat by Sergeant Logan. (Complaint pg. 3). He then alleges that he was slammed into a filing cabinet and choked until he almost passed out. (Complaint pg. 3). He also claims that he was threatened by Sergeant Logan and Sergeant King. The plaintiff further claims that Officer John Gordon did not stop the excessive force being used. (Complaint addendum pg. 2).

## DAMAGES/RELIEF DEMANDED

The plaintiff has demanded that "the this (sic) case be sent to the D.A. of Elmore County and the plaintiff be talking to the Elmore County D.A. office to file charges on the defendants." The plaintiff has also demanded that he be given back his good time; that Sgt. Logan's and Sgt. King's rank be removed; that an injunctive order be issued directing the defendants send this case to the Elmore County D.A.; and that the plaintiff be interviewed and two witnesses by interviewed by the I & I Division.

## DEFENDANTS' RESPONSE

Defendants respond to the plaintiff's complaint as follows:

1. Defendants deny that excessive force was used against the plaintiff.

2. Defendants assert that the plaintiff has failed to state a claim upon which relief can be granted.

3. Defendants deny that any of the plaintiff's Constitutional rights have been violated.

4. Defendants plead the affirmative defenses of qualified and absolute immunity.

5. Defendants assert that the plaintiff has failed to show there is any genuine issue of the material facts of this case and the defendants are entitled to judgment as a matter of law.

## STATEMENT OF FACTS

On September 21, 2005 at approximately 6:30 A.M., Officer Elizabeth Sheffield entered the Shift Office and advised that inmate Adam Bethune (the plaintiff) failed to comply with her order to get up and also became insubordinate toward her. (Exhibit A). Sgt. Logan, along with Officer Sheffield, entered #3 cell and approached the plaintiff's assigned bed. (Exhibit A). Sgt. Logan observed that the plaintiff's living area was not in compliance and he was still in bed. (Exhibit A). The plaintiff stated, "Look at everyone else still in bed. That woman is messing with me." (Exhibit A). Sgt. Logan ordered the plaintiff to get up. (Exhibit A). The plaintiff got up and stated directly to Sgt. Logan in an insubordinate tone, "I'm going to have my folks call the Commissioner about this shit, that's not a threat that is a promise." (Exhibit A). Sgt. Logan then informed the plaintiff that he was going to be moved to #5 cell upstairs, Draper's behavior modification Cell due to his negative behavior. (Exhibit A). The plaintiff stated, "I'm not going to 5 up, you might as well do what the hell you gonna do." (Exhibit A). Sgt. Logan then escorted the plaintiff out of #3 Cell to the Shift Office. (Exhibit A, B and C). At no time did Sgt.

Logan verbally threaten the plaintiff. (Exhibit A, B and C). Officer John Gordon, who was present in the back office, was asked to leave and report to the front office due to the back office being so small in size. (Exhibit A). Officer Gordon exited the back office and reported to the front office. (Exhibit A). Sgt. Logan then escorted the plaintiff to the back office, where Sgt. Brenda King was present. (Exhibit A and C). Sgt. Logan then verbally reprimanded the plaintiff on his negative behavior. (Exhibit A and C). At no time did Sgt. Logan "choke" or use any force on the plaintiff. (Exhibit A and C). The plaintiff continued to verbally threaten Sgt. Logan as Sgt. Logan was verbally reprimanding him by stating that he was going to have the Commissioner do something about "this crazy shit." (Exhibit A and C). At approximately 7:25 AM, the plaintiff was examined by LPN B. Pernell due to his being placed in Administrative Segregation for violating Rule #57-Insubordination X 2. (Exhibit A).

On September 20, 2005, the plaintiff received disciplinary action for being insubordinate toward Officer John Gordon (see incident report attached to Exhibit A) On September 21, 2005, at approximately 11:00 AM, Captain Joseph Womble advised Sgt. Logan that the plaintiff alleged that Sgt. Logan had choked him in the Shift Office. (Exhibit A). Captain Womble also advised that the plaintiff's neck appeared to be red. (Exhibit A). Sgt. Logan informed Captain Womble that Inmate Bethune was not choked and also informed Captain Womble that the plaintiff received a body chart at 7:25 AM, which indicated no signs of being choked prior to being placed in a segregation cell. (Exhibit A). At approximately 11:15 AM, the plaintiff was examined by LPN M. Adair, which indicated purple discoloration noted in his neck area (see attached medical forms attached to Exhibit A) per Captain Womble. (See Exhibit A). At approximately 1:10

PM, Sgt. Logan contacted the Director of Nursing, RN Darrell Ellis, and asked RN Ellis if he observed any sings of the plaintiff being choked. (Exhibit A). RN Ellis advised that when the plaintiff entered the Health Care Unit at 11:15 AM, he observed some redness on the plaintiff's neck. (See Exhibit A). RN Ellis then advised that he re-entered the room where the plaintiff was being examined approximately 10 minutes from RN Ellis' first observance of the plaintiff and observed a fresh red mark on his neck that was not present approximately 10 minutes earlier. (See Exhibit A). It is believed that any marks on the plaintiff's neck were self-inflicted. (See Exhibit A). At approximately 1:35 pm, Sgt. Logan informed Captain Womble and Warden James DeLoach that he was going to initiate disciplinary action against the plaintiff for making a false statement or charge to an ALDOC employee or to prejudice another person. (See Exhibit A).

On September 28, 2005, during the disciplinary hearing, the plaintiff again became insubordinate toward Sgt. Logan and stated, "I'm going to get you and them stripes." (See Exhibit A). Approximately three weeks later, the plaintiff approached Sgt. Logan in the dining hall and stated, "You give me back my good time and I won't sue you." (See Exhibit A). At no time did Sgt. Logan physically abuse the plaintiff. (See Exhibit A). Sgt. Logan did verbally reprimand the plaintiff on his negative behavior but never physically touched the plaintiff. (See Exhibit A).

## ARGUMENT

Summary judgment is proper if the pleadings, affidavits and documents submitted to the court show that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986). Once the movant has established that there is no genuine issue, then the burden shifts to the non-movant to rebut the movant's prima

facie showing. *Celotex Corp. v. Catrett*, 477 U.S. 323 (1986). Unless the non-movant can submit substantial evidence that a genuine issue of material fact does exist, the movant is entitled to summary judgment. *Id.* This case is ripe for summary judgment because the plaintiff cannot present substantial evidence that there is a genuine issue of material fact as to any of his claims and the defendants are entitled to judgment as a matter of law.

The plaintiff has no injury upon which he can base a claim. To state a claim, an inmate's injuries need not be significant, but must be more than de minimus. *Harris v. Garner*, 190 F.3d 1279, 1287 (11th Cir.); modified in part by *Harris v. Garner*, 216 F. 3d 970 (2000). Also, as stated in 42 U.S.C. § 1997e(e), "no federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." To satisfy the injury requirement, an inmate need not show permanent injury, but must "offer some evidence of injury beyond a minimal one." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). A claim of being grabbed at the throat and slammed into a cabinet in the face does not meet this standard, as injuries more severe than this have consistently been found not sufficiently serious to state an Eighth Amendment claim. *Bennett*, 898 F2d. at 1533 (inmate's allegation of being struck in the head with a night stick did not state sufficient injury); *Brown. v. Smith*, 813 F.2d 1187 (11th Cir. 1987) (inmate's allegation he was pinned against a wall by the neck with a riot baton did not state sufficient injury); *Siglar v. Hightower*, 112 F. 3d 191 (5th Cir. 1997) (bruised and sore ear insufficient); *Lassan v. City of Orange Beach*, 2000 W.L. 1844683 (S.D. Ala. 2000) (broken bone and digestive problems insufficient). Further, the plaintiff has not

submitted any medical evidence that would support his claim. The body charts do not reflect any significant injury and in fact the red marks appear to be self inflicted. (Exhibit A). It is impossible to make a valid excessive force claim against a corrections officer when that officer did not use any force. (Exhibits A, B and C). And because the plaintiff had no injury, he is barred from making a claim of emotional distress. Because the plaintiff's injuries are minimal, he has not stated an Eighth Amendment claim and the defendants are entitled to summary judgment.

The defendants are entitled to judgment from the plaintiff's claims based on qualified immunity, which "protects government officials from civil trials and liability when their conduct in performing discretionary functions 'violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Blankenship*, 163 F.3d 1284, 1288 (11th Cir. 1998), quoting *Lassiter v. Alabama A&M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994). Monitoring and restraining violent inmates is a field that requires discretionary choices by the defendants (Exhibits A, B and C.) The plaintiff has failed to cite a case that puts any defendant on notice that their actions violated clearly established law, so the defendants are entitled to qualified immunity.

To the extent that the plaintiff asserts his claims against the defendants in their official capacities, the claims must fail because the defendants are entitled to immunity via the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign

state." The Amendment not only bars suits against a state by citizens of another state, but it also bars suits against a state by that state's own citizens. See *Edelman v. Jordan*, 415 U.S. at 663, 94 S. Ct at 1347 and *Hans v. Louisiana*, 134 U.S. 1, 13-15, 10 S. Ct. 504, 33 L.Ed. 842 (1890). The defendants were acting within the scope of their official duties in this instance on behalf of the State of Alabama. The plaintiff has named the Alabama Department of Corrections as a defendant and therefore has sued the State of Alabama. The State of Alabama has not waived its immunity or consented to the filing of such a suit. The defendants are absolutely immune from suit in this instance. U.S. Const. amend. 11; Art. I, § 14, ALA. Const. (The State of Alabama shall never be made a defendant in any court of law or equity); see also *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (a claim against a state official in his official capacity is a claim against the state).

Summary judgment is proper if the pleadings, affidavits and documents submitted to the court show that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986). This case is ripe for summary judgment because there is no genuine issue of fact as to the plaintiff's claims and the defendants are entitled to judgment as a matter of law.

## CONCLUSION

Based on the foregoing, the defendants respectfully request that this Honorable Court enter a summary judgment in their favor.

Respectfully submitted,

TROY KING
ATTORNEY GENERAL

/s/ MATTHEW Y. BEAM
MATTHEW Y. BEAM (BEA065)
ASSISTANT ATTORNEY GENERAL

**ADDRESS OF COUNSEL**

Office of the Attorney General
General Civil Litigation
11 South Union Street
Montgomery, Alabama 36130
(334) 242-7340
fax: (334) 242-2433

**CERTIFICATE OF SERVICE**

I hereby certify that this 11th day of January, 2006, served a copy of the foregoing on the plaintiff by placing same in the United States mail, postage prepaid and addressed as follows:

Mr. Adam Bethune
AIS: 183099
Draper Correctional Facility
P.O. Box 1107
Elmore, AL  36025

/s/ MATTHEW Y. BEAM
MATTHEW Y. BEAM (BEA065)
ASSISTANT ATTORNEY GENERAL